**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON WALLACE individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED NATURAL FOODS, INC.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Sharon Wallace ("Plaintiff") brings this action on behalf of herself and all others similarly situated against United Natural Foods, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Essential Everyday Mixed Fruit in 100% Juice, Chunky (collectively, "fruit can" or the "Product").

2. Defendant markets the Product as being contained in "100% juice." However, and unbeknownst to reasonable consumers, the Product contains the synthetic additive ascorbic acid. The inclusion of ascorbic acid, a synthetic preservative, renders Defendant's on-label claims that the Product is contained in 100% juice false and misleading.

3. Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (4) Breach of Express Warranty.

**PARTIES**

4. Plaintiff Sharon Wallace is a citizen of California residing in Sacramento, California. Plaintiff Wallace purchased Defendant's Product for her personal use in 2024 from a local grocery store in Sacramento, California. Prior to making her purchase, Plaintiff Wallace saw and relied on Defendant's on-label representations that the Product was contained in "100% juice." Plaintiff Wallace saw this representation and warranty prior to, and at the time of, her purchase. Thus, Plaintiff Wallace reasonably relied on Defendant's representation when she decided to purchase the Product. Accordingly, this representation and warranty was part of the basis of her bargain, in that Plaintiff Wallace would not have purchased the Product on the same terms had she known that this representation and warranty was untrue. Furthermore, in making her purchases,

Plaintiff Wallace paid a price premium due to Defendant's false and misleading claim regarding the Product's purported fruit juice content. However, Plaintiff Wallace did not receive the benefit of the bargain because the Product is not, in fact, contained in exclusively 100% juice, but rather includes the synthetic preservative ascorbic acid. Had Plaintiff Wallace known that Defendant's representation and warranty about the Product was false and misleading, Plaintiff Wallace would not have purchased the Product or would have paid substantially less for it.

5. Defendant United Natural Foods, Inc. is a Rhode Island Corporation with its principal place of business in Providence, Rhode Island. Defendant manufactures, markets, and sells the Product throughout California and the United States.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs, and Plaintiff, as well as most members of the proposed Classes, are citizens of states different from Defendant.

7. This Court has personal jurisdiction over Defendant because it conducts and transacts business in the State of California, including this District, thereby purposefully availing itself to the benefits of the forum. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchasing the Product in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place in this District.

## FACTUAL ALLEGATIONS

**A. Consumers' Juice and Natural Flavor Preferences**

9. "Clean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[1] In fact, at least one survey found that "Americans are

---

[1] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) *available* https://www.innovamarketinsights.com/trends/food-trends/ (last accessed July 10, 2024).

paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[2]  In fact, a 2023 study of consumer perceptions and preferences found that products "Labeled as Having No Artificial Ingredients/Colors" was the second highest scoring indicator of food safety according to respondents.[3]

10.     Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling its Product as being contained in "100% Juice."  Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: pure juice representations made clearly and conspicuously on the front of its labels while inconspicuously disclosing contradictory ingredient information on the other side of the packaging.

### B.     Ascorbic Acid and Mislabeling

11.     "Ascorbic acid is a human-made isolate used in myriad processed supplements that was created to cost-effectively mimic and replace naturally-occurring vitamin C found in natural food.  It's often derived from GMO corn starch, GMO corn sugar or rice starch."[4]  For that reason, ascorbic acid is referred to as "synthetic vitamin C."[5]  Although ascorbic acid can be naturally occurring and mimics vitamin C's chemical structure, its "reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid

---

[2] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) *available* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed July 10, 2024).

[3] International Food Information Counsel, *2023 Food and Health Survey*, (May 23, 2023) *available* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://foodinsight.org/wp-content/uploads/2023/05/IFIC-2023-Food-Health-Report.pdf at 73 (last accessed July 10, 2024).

[4] Smidge Blog, *Why Real Food Vitamin C is better Than Ascorbic Acid – And How To Tell The Difference*, (June 1, 2021), *available* https://www.getsmidge.com/blogs/news/vitamin-c-versus-ascorbic-acid (last accessed July 16, 2024).

[5] Mount Sinai, *Vitamin C (Ascorbic Acid)*, available https://www.mountsinai.org/health-library/supplement/vitamin-c-ascorbic-acid (last accessed July 16, 2024).

being synthetically produced."[6] To that end, ascorbic acid is used primarily as a an antioxidant that helps prevent microbial growth and oxidation in food products.

12. Accordingly, the U.S. F.D.A. considers ascorbic acid a food additive.[7]

13. In fact, just like Defendant's misbranded product here, in 2015, the U.S. F.D.A. informed fruit product producer Chiquita Bananas that its Pineapple Bites and Pineapple Bites with Coconut products were "misbranding with the meaning of section 403(k) of [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid … but their labels fail[ed] to declare these preservatives with a description of their functions."[8]

C. **Defendant's Representations and Warranties**

14. Defendant's label affirmatively represents to consumer that its Product is "in 100% juice."



---

[6] National Organic Program, *Ascorbic Acid – Technical Evaluation Report*, U.S. Dep't of Agriculture (July 17, 2019) *available* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed July 16, 2024).

[7] U.S. Food & Drug Admin., *Food Additive Status List*, (last accessed July 16, 2024), *available* https://www.fda.gov/food/food-additives-petitions/food-additive-status-list.

[8] David Bellm, *Food Packaging: FDA Says Chiquita Labels Are Misleading*, Packing Digest (Mar. 11, 2015) *available* https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading (last accessed July 16, 2024).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                      4

15. Unfortunately for consumers like Plaintiff, despite the front label of the Product prominently and affirmatively representing that the Product is comprised of 100% juice, the back of the packing, in small print, reveals the presence of ascorbic acid, a synthetic additive.



16. By labeling the Product as "in 100% Juice," Defendant deliberately attempts to distinguish itself from other fruit juices containing additional synthetic ingredients or preservatives. As discussed above, however, Defendant's Product is not contained in "100% Juice," as it contains synthetic vitamin C in the form of ascorbic acid, a well-known, synthetic non-juice additive.

## CLASS ALLEGATIONS

17. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) defined as ("collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for consumption (the "Class").

> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for consumption (the "California Subclass").

18. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

19. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

20. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

21. **Numerosity:** While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

   (a) Whether Defendant's Product was comprised exclusively of 100% fruit juice;
   (b) Whether reasonable consumers would understand Defendant's representations and warranties concerning its juice content to be untrue and misleading;
   (c) Whether a reasonable consumer understands "100% Juice" to mean wholly free of synthetic additives;
   (d) Whether Defendant's representations and warranties were material;
   (e) Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint.

23. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law

("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

24. **_Typicality:_**  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Product, purchased the deceptive Product in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

25. **_Adequacy:_**  Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the members of the Classes.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

26. **_Superiority:_**  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress for their injury, other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with California's consumer protection laws.  If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

# CAUSES OF ACTION

## COUNT I
### Violation of California's Consumer's Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

27. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

28. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

29. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

30. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

31. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by advertising that the Product contained exclusively 100% juice, even through it contains a synthetic preservative.

32. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

33. On August 20, 2024, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.  If Defendant does not fully correct the problem for Plaintiff and for the members of the California Subclass within 30 days after service of Plaintiff's notice letter, Plaintiff and the California Subclass will amend the complaint to seek all monetary relief allowed under the CLRA.

34. Pursuant to California Civil Code §§ 1780(a)(1)-(5), Plaintiff and the California

Subclass seek injunctive relief, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

### COUNT II
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of the Plaintiff and California Subclass)

35. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

36. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

37. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by engaging in unfair, fraudulent, and unlawful business practices.

38. Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for her own personal use. In so doing, Plaintiff relied upon Defendant's false representations that the Product was exclusively "in 100% juice" when the Product actually contained a synthetic preservative. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

39. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

40. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

41. Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above.

42. Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive "100% juice" representations have misled consumers into purchasing the Product over other truthfully labeled competitors.

43. Plaintiff and the California Subclass members suffered substantial injury by buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of ascorbic acid, a synthetic additive.

44. There is no benefit to consumers or competition from deceptively marketing that the Product is comprised of 100% juice when it is not.

45. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

46. Plaintiff and the California Subclass members could not have reasonably avoided their injury or known that the Product's prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures. As such, they could not have reasonably avoided the injury they suffered.

47. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in her other causes of

action, in the event that such causes of action will not succeed. Plaintiff and the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1023-25 (9th Cir. 2011) (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the California Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith. Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. Finally, Plaintiff and the California Subclass members lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct.

48. Accordingly, Plaintiff seeks, on behalf of herself and the California Subclass members, equitable relief, including restitution for the premium and/or the full price that she and others paid to Defendant as result of Defendant's conduct. Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff and the California Subclass members' attorneys' fees and costs.

**COUNT III**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

49. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

51. The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

52. As described throughout this Complaint, Defendant misrepresents that the Product is comprised of 100% Juice when, in fact, it contains ascorbic acid, a synthetic additive.

53. The misrepresentations by Defendant and the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et. seq.*

54. Defendant knew or should have known that its advertising claims are misleading and/or false.

55. Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Product.

56. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action will not succeed. Plaintiff and the California Subclass members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard

applied under the FAL, because Plaintiff may not be able to establish each California Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs*. USA LLC, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the California Subclass members may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith. Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price ensuing from Defendant's misrepresentations about the Product misrepresentations will ensure that Plaintiff and the California Subclass members are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the Product absent those misrepresentations with the full purchase price at their disposal.

57. Accordingly, Plaintiff seeks, on behalf of herself and the California Subclass members, equitable relief, including restitution for the premium and/or the full price that she and others paid to Defendant as a result of Defendant's conduct. Plaintiff and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the FAL; and (c) pay Plaintiff and the California Subclass members' attorneys' fees and costs pursuant to Cal. Code Civ. Proc. §1021.5.

### COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)

58. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

59. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

60. Plaintiff brings this claim under the laws of the State of California.

61. Plaintiff and the Nationwide Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide Class Members purchased the Product.

62. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging that they were comprised of 100% juice.

63. This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

64. As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that the fruit is kept in 100% juice. However, Defendant breached its express warranties about the Product by including ascorbic acid, an artificial, synthetic additives, thereby rending its prominent "100% Juice" representation and warranty false and misleading. Simply, the Product does not conform to Defendant's representations and warranties.

65. Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

66. Plaintiff and the members of the Nationwide Class would not have purchased the Product had they known the true nature of the Product.

67. As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to all damages, in addition to costs, interest and feed, including attorneys' fees, as allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For an order of restitution and all other forms of equitable monetary relief;

e)     For injunctive relief as pleaded or as the Court may deem proper;

f)     For an order awarding Plaintiff and the Classes' their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 21, 2024          **BURSOR & FISHER, P.A**.

By:    */s/ L. Timothy Fisher*
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Facsimile:  (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration**

I, L. Timothy Fisher, declare as follows:

    1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff.  Plaintiff Wallace resides in Sacramento, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

    2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in this Complaint occurred in the Eastern District of California as Plaintiff Wallace purchased the Product in Sacramento, California.  Additionally, Defendant sold, marketed, and distributed the Product at issue to Class Members in this District.

    3.    I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this August 21, 2024.

                                    */s/ L. Timothy Fisher*
                                        L. Timothy Fisher